# IN THE COURT OF APPEALS OF IOWA

No. 22-0156
Filed April 13, 2022

**IN THE INTEREST OF B.T. and B.T.,**
**Minor Children,**

**L.T., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic,
District Associate Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Cameron M. Sprecher of Sprecher Law Office, PLC, Mason City, for
appellant father.

Thomas J. Miller, Attorney General, and Diane Murphy Smith, Assistant
Attorney General, for appellee State.

Carrie J. Rodriguez, Garner, attorney and guardian ad litem for minor
children.

Considered by May, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

We have often relied on the maxim "too little, too late" in affirming terminations of parental rights.[1] Here, we must decide whether a father who was sober from alcohol for 120 days by the time of the termination hearing falls within that category. Given the record and arguments before us, we conclude that he does.

I.    **Background Facts and Proceedings**

Over the last several years, the father's two children, born in 2011 and 2012, have been the subjects of many assessments by the Iowa Department of Human Services. The allegations included reports of sexual and physical abuse, the poor condition of the home, lack of food, domestic violence between the mother and her paramour, and alcohol abuse by the father.[2] It appears the children resided mainly with the mother, her paramour, and their three half-siblings during this time, though they had some visitation with the father under a custody agreement between him and the mother.

The family's most recent involvement with the department began in 2019 when concerns arose about the uninhabitable condition of the mother's home, her paramour's physical abuse of the children, and the lack of care the children were

---

[1] The case usually cited for this proposition is *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000), where our supreme court held a parent's efforts "in the two or three months before the termination hearing, in light of the preceding eighteen months" were insufficient. *Accord In re A.E.*, No. 16-0510, 2016 WL 32371887, at *3 (Iowa Ct. App. June 15, 2016) (collecting cases noting last-minute efforts are not reliable).

[2] None of the assessments appear in the record before us. Instead, we have only the general descriptions of the allegations as stated above with no indication of how many assessments were confirmed or founded.

receiving. When those conditions did not get better, the State proceeded with child-in-need-of-assistance petitions in April. Soon after the filing of those petitions, the condition of the mother's home improved, and the children were returned to her care. But the living situation deteriorated quickly and, in May, the children were adjudicated to be in need of assistance. They were transferred to the department's custody for placement in foster care, where they have since remained.

The father began participating in family safety, risk, and permanency services around the time of adjudication, and the provider involved reported ongoing concerns about the father's alcohol abuse and the condition of his home. The father remedied the issues with his home in fairly short order, but the alcohol abuse proved tougher. He submitted to a behavioral-health assessment in July, which led to diagnoses of moderate alcohol use disorder and major depressive disorder along with a recommendation for extended outpatient treatment.[3]

By December, concerns for the father's alcohol abuse continued. The department could not confirm whether he was participating in any treatment even though the father had signed a full release for his treatment provider. On one occasion in late December, the father was intoxicated when a department worker arrived at his home for a scheduled visit at 9:00 a.m. The father became emotional

---

[3] The father also submitted to a psychological evaluation in August. That evaluation is not part of the record before us, although a report to the juvenile court from the department stated the father was diagnosed with moderate alcohol use disorder and post-traumatic stress disorder. The termination ruling states the psychological evaluation also "not[e]d a significant intellectual disability," but we cannot find reference to that disability anywhere else in the record.

and honestly reported he had been drinking that morning. He also reported that he had suffered a heart attack a couple of days before the visit.

Despite his participation in Alcoholics Anonymous and therapy, the father continued to struggle with alcohol. He had regular visitation with the children, but he often reported relapses and said long-term sobriety was not a realistic option for him. On several occasions, the father either cancelled visits because of his intoxication or appeared to be intoxicated during interactions. The father also struggled to engage with the children during visits. In early May 2021, based on the father's inability to remain sober, the ongoing issues in the mother's home, and the children's need for permanency, the department recommended the initiation of termination proceedings.

Shortly after that recommendation, at a visit in early June, the visitation supervisor arrived at the father's house and found him passed out on the couch with "an empty 40 oz bottle of beer on the coffee table in front of him." The provider woke the father up to make sure he was okay, but he was "clearly still intoxicated, stumbling, slurring his speech." The children were present during this interaction. This seems to have been a turning point of sorts for the father. At the next visit, the father told the provider he was going to three Alcoholic Anonymous meetings each week instead of just two. In early August, the father began to cut back on his use of alcohol, "with some days not drinking any." As time marched on, the visitation supervisor reported no concerns of alcohol abuse. In late September, the father credibly reported he had not consumed alcohol in nineteen days.

The State filed the termination petitions leading to this appeal in November 2021.[4]  By then, the father had continued to attend individual and group therapy and remained alcohol free, with almost two months of sobriety under his belt.  The department also reported his engagement with the children during visits had improved.  The father bought bikes for the children, worked on puzzles with them, met them at a park for visits, played ball with them, and helped them build a toy car.  He coordinated meals with the mother and always offered the children something to eat.  No safety concerns were noted at his home.  And reports from the visitation supervisor describe the children as "happy to see" their father and "enjoying the visits."  Despite these positive steps, the father's visits with the children remained fully supervised and never increased in frequency or duration.

Trial was held in January 2022.  A recent therapy update showed the father remained alcohol free with continued attendance at several group and individual therapy sessions per week that were focused in part on "early recovery/relapse prevention and intervention needs."  The update reported the father

> shared openly in the group setting, offering personal insights and observations that add value to the group discussion.  He is also a kind and supportive group member.  Individual sessions focus on problem solving and working to resolve developmental traumas, which have resulted in maladaptive coping strategies for much of the patient's adult life.
>     . . . The patient continues to track sober days on his monthly calendar and reports them to group members each visit.  He is utilizing the RISE Iowa recovery app for additional sober support and skills development.  The patient often reflects on the need to focus on "one-day-at-a-time" in recovery.  He has worked to improve cognitive self-change strategies to notice and redirect "stinking

---

[4] According to the permanency order in May, the State had already filed termination petitions.  However, the November permanency-review order states that those petitions were dismissed following a hearing.  The district court records from the first set of termination proceedings are not part of the record in this appeal.

thinking" and use thought-stopping measures when necessary. Most significantly, the patient has begun to heal from the abuse he endured as a child and adolescent . . . .

In sum, the treatment provider concluded: "I continue to be encouraged by [the father's] engagement and progress."

The father was roughly four months sober at the time of trial, and the department caseworker agreed during her testimony that he had taken all the steps that were asked of him. Yet she recommended that the father's rights be terminated based on the children's need for permanency, the father's long history of alcohol abuse in comparison to his recent short term of sobriety, and the possibility for relapse based on his lack of supports.

In its ruling, the juvenile court agreed with the caseworker's assessment. The court noted the father's situation was a close call given his "tremendous accomplishment" but remained concerned about his "years of struggle" with alcohol and the resulting poor relationship with his children. Like the caseworker, the court found the father's continued sobriety questionable given his long-term abuse in comparison to short-term sobriety. According to the court, "Conventional wisdom usually supports six months of sobriety before being able to 'trust' it as a permanent life change, which we are a couple months shy of." The court also considered the father's lack of a driver's license and support system, the lack of a connection between him and the children, his historical lack of protective capacities for the children, his health issues, his unresolved childhood trauma, and the children's need for permanency. Based on all of these considerations, the court

found the children could not be placed in the father's care and terminated his parental rights under section 232.116(1)(f).[5]  The father appeals.

## II.    Analysis

We apply a three-step analysis in conducting our de novo review of termination of parental rights, asking whether (1) a statutory ground for termination is satisfied, (2) the children's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination.  *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3).  The father challenges only the first and third steps.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating that where a parent does not contest a step in the analysis, "we do not have to discuss [that] step").

The father's challenge to the first step is limited to the final element of the statutory ground relied on by the juvenile court in terminating his parental rights— whether the children could safely be returned to his care at the time of the termination hearing.[6]  *See* Iowa Code § 232.116(1)(f)(4) (requiring "clear and convincing evidence that at the present time the child cannot be returned to the

---

[5] While the dispositional portion of the termination ruling noted the father's rights were being terminated under both section 232.116(1)(e) and (f), the court's actual analysis under paragraph (e) was limited to the mother and a different father of one of the mother's other children.  The court made no factual findings or legal conclusions that termination of the appealing father's parental rights was appropriate under paragraph (e).  The court did provide such findings and conclusions about the father under paragraph (f).

[6] Because the district court cited two termination provisions as to the father, the State submits we can affirm under section 232.116(1)(e) since the father does not challenge it.  That would normally be true, but without any analysis of that provision as to the father, we question whether the court intended to terminate under that ground or whether its inclusion was instead a typographical error.  We therefore choose to focus on termination under paragraph (f).

custody of the child's parents"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). In support of this argument, the father asserts the State did not prove the required nexus between his alcohol abuse and an appreciable risk of adjudicatory harm to the children if returned to his care.[7] *See In re M.S.*, 889 N.W.2d 675, 682 (Iowa Ct. App. 2016) ("[T]he mere fact of use does not establish adjudicatory harm.").

The father heavily relies on our decision in *In re B.F.*, No. 20-1126, 2020 WL 7385261, at *7 (Iowa Ct. App. Dec. 16, 2020), where we considered whether a father's "marijuana use, failure to comply with requested drug testing, and failure to follow treatment recommendations constitute[d] clear and convincing evidence sufficient to terminate his parental rights." We held it did not, relying in part on evidence showing that the father did not use marijuana around the child and the lack of any reports that he was under the influence when interacting with the providers or the child. *Id.* at *8–9; *see also M.S.*, 889 N.W.2d at 681 (finding no nexus between a father's cannabis use and adjudicatory harm to the child where the father never interacted with the child while impaired). Here, in contrast, providers observed the father intoxicated several times, including on visits with his children. That the father exposed the children to his alcohol abuse in the past

---

[7] The State counters that this argument should be deemed waived because the father didn't provide "facts or authority specific to his case to support his argument that the evidence was insufficient." The father's appellate attorney was somewhat hampered in his ability to do so because he was not the father's attorney during the juvenile court proceedings and no transcript had been prepared by the time the petition on appeal was due. We accordingly elect to give the father the benefit of the doubt and proceed to the merits of his claim.

leads to a concern he would do so again, despite his present sobriety. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) ("The threat of probable harm will justify termination. . . .").

This is not to diminish the father's accomplishments—he was 120 days sober by the time of the termination hearing and regularly attending treatment; he had a suitable and safe house; he successfully applied for housing assistance to free up funds for other needs; and he had consistent visits with the children that, for at least the six months before the termination hearing, were appropriate. But throughout the life of this case, which spanned more than eighteen months, those fully-supervised visits were limited to one and a half hours one time per week. Our decision may have been different had the father's visits with the children increased or progressed beyond supervised. *Cf. In re D.M.*, No. 21-0882, 2021 WL 4303626, at *6 (Iowa Ct. App. Sept. 22, 2021) ("The father's ability to attend to a child for two hours once a week while fully supervised does not carry much weight in the balance."). But for whatever reason, they did not.[8] As a result, the father's relationship with the children was limited, as is our ability to forecast whether he could appropriately care for the children while remaining sober. *See In re K.M.*, No. 16-0795, 2016 WL 4379375, at *9 (Iowa Ct. App. Aug. 17, 2016) ("A good deal of prognostication is required in termination cases."). We accordingly find clear

---

[8] The father did argue at the termination hearing "that reasonable efforts would have dictated that he be considered for placement—or at least be able to move towards that with semi-supervised visits." However, it is the parent's responsibility "to demand other, different[,] or additional services *prior* to the termination hearing." *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (emphasis added).

and convincing evidence the children could not be returned to the father's care at the present time.

The father next points out that "[u]nder Iowa Code [section] 232.116(3)(c), the juvenile court need not terminate parental rights if there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." He argues the court should have exercised this permissive exception to termination because the evidence "does not show that there was never a close relationship between father and his children." But it is the father's burden to prove this exception, which he failed to do. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception to termination . . . ."). The evidence shows that while the children enjoyed their visits, they were not closely bonded to the father.

Lastly, the father argues the court "erred in determining that another six months for reunification was not warranted." The father never requested an extension of time, either before trial or in his conclusory argument at trial. Nor did the juvenile court consider or rule on the issue. Though this may well have been a good case for an extension of time, error was not preserved for our review. *See, e.g., In re N.N.*, No. 21-1978, 2022 WL 610318, at *1 (Iowa Ct. App. Mar. 2, 2022); *In re G.C.*, No. 21-1781, 2022 WL 246270, at *5 (Iowa Ct. App. Jan. 27, 2022).

In the end, we do find this was a case of "too little, too late," despite the father's commendable achievement in obtaining sobriety—an achievement we hope he maintains. Finding no cause for reversal on the issues properly presented

for our review, we affirm the termination of the father's parental rights.

**AFFIRMED.**